UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

FRED LOPEZ, §
 §
  Plaintiff, §
 §
VS. § CIVIL ACTION NO. 7:18-CV-260
 §
ALLSTATE TEXAS LLOYDS, §
 §
  Defendant. §

## OPINION & ORDER

The Court now considers the "Motion for Summary Judgment"[1] filed by Allstate Texas Lloyds ("Defendant"), the response[2] and supplemental response[3] filed by Fred Lopez ("Plaintiff"), and Defendant's reply.[4] The Court also considers Plaintiff's "Motion for Partial Summary Judgment,"[5] Defendant's response,[6] and Plaintiff's reply;[7] Defendant's "Motion to Abate and Administratively Stay Case;"[8] and Defendant's "Agreed Motion to Withdraw."[9]

After considering the record, motions, and relevant authorities, the Court **GRANTS** Defendant's "Agreed Motion to Withdraw;" **DENIES AS MOOT** Defendant's "Motion to Abate and Administratively Stay Case;" **GRANTS IN PART** and **DENIES IN PART** Defendant's "Motion for Summary Judgment;" and **DENIES** Plaintiff's "Motion for Partial Summary Judgment."

---

[1] Dkt. No. 30. The Court notes Defendant incorrectly characterizes its own name by titling its motion as "Defendant Allstate Vehicle and Property Insurance Company's Motion for Summary Judgment."
[2] Dkt. No. 31.
[3] Dkt. No. 36.
[4] Dkt. No. 32.
[5] Dkt. No. 39.
[6] Dkt. No. 41.
[7] Dkt. No. 42.
[8] Dkt. No. 40.
[9] Dkt. No. 55.

# I.  BACKGROUND

This is a first-party insurance case involving Plaintiff's denied claim for storm damage to his Rio Grande City, Texas property under his policy with Defendant (the "Policy").[10] Plaintiff's property was covered under the Policy from July 24, 2017 to July 28, 2018 with a $2,012.00 windstorm and hail deductible.[11] Plaintiff alleges an October 21, 2017 wind and hail storm damaged his "roof, exterior siding of the home, windows, window screens, fence, and fascia boards surrounding the home."[12] Shortly thereafter, Plaintiff submitted[13] his claim to Defendant, which Defendant acknowledged[14] on November 2, 2017. Defendant's inspector, Todd Curtis ("Mr. Curtis"), inspected Plaintiff's property on November 16, 2017, and "drafted an estimate, listing [Plaintiff's] replacement cost value of [Plaintiff's] damages below the deductible of $2,012.00."[15]

According to Plaintiff, Mr. Curtis then "issued two conflicting views"[16] and "misrepresented the damages to [Plaintiff] in his estimate and subsequent correspondence"[17] in a November 20, 2017 claim decision letter and a December 6, 2017 claim denial letter. The November 20, 2017 claim decision letter from Mr. Curtis states, "[Plaintiff's] damage estimate is less than [Plaintiff's] policy deductible of $2,011.00 [sic], [and] [b]ecause of this, there will be

---

[10] Dkt. No. 24 (Plaintiff's Second Amended Complaint); Dkt. Nos. 30-1 (the Policy attached by Defendant) & 39-1 (the Policy attached by Plaintiff) (collectively, the "Policy"). The property is located at 2395 Sable Palm Dr., Rio Grande City, Texas 78582. Plaintiff's Policy No. is 936345143 and Claim No. is 0480769958.

[11] Dkt. No. 24 p. 2, ¶ 5; the Policy. A November 20, 2017 letter from Mr. Curtis characterizes the Policy deductible as "$2,011.00." Dkt. No. 30-5.

[12] Dkt. No. 24 p. 2, ¶ 6.

[13] It is unclear when Plaintiff submitted his claim because Plaintiff does not attach supporting documentation.

[14] Dkt. No. 30-3 (November 2, 2017 letter attached by Defendant); Dkt. No. 39-2 (November 2, 2017 letter attached by Plaintiff).

[15] Dkt. No. 24 p. 2, ¶ 8; Dkt. No. 30-4 (November 16, 2017 estimate attached by Defendant listing the date of inspection and date of completed estimate as November 16, 2017 and sworn as true and accurate by Carl J. Marsico, Defendant's custodian of records); Dkt. No. 30-2 (Carl J. Marsico's Affidavit in Support of Summary Judgment Evidence); Dkt. No. 39-4 (December 15, 2017 estimate attached by Plaintiff reflecting a November 16, 2017 inspection and December 15, 2017 completion of estimate); Dkt. No. 30-6 (December 15, 2017 estimate attached by Defendant reflecting a November 16, 2017 inspection and December 15, 2017 completion of estimate).

[16] Dkt. No. 24 p. 3, ¶ 11.

[17] *Id.* at p. 2, ¶¶ 9–10.

no payment made at this time and [Plaintiff's] claim will be closed."[18] In the December 6, 2017 claim denial letter, Mr. Curtis states "there was no physical or additional damage sustained in the loss . . . [and] [Defendant] cannot issue payment for the specific areas that [Defendant] inspected and did not find any physical damage."[19]

While a date of reinspection is unclear, Mr. Curtis apparently completed a second estimate on December 15, 2017.[20] The December 15, 2017 estimate differs from the November 16, 2017 estimate in several ways. Under "Summary for AA-Dwelling," the December 15, 2017 estimate increased the November 16, 2017 estimate's "Full Deductible" from $667.83 to $911.00."[21] Under "Summary for BB-Other Structures," the December 15, 2017 estimate also includes "Full Deductible = 1,100.00," which is not present on the November 16, 2017 estimate.[22] Further, the December 15, 2017 estimate includes a "Summary for AA-470T-Trees," which is absent in the November 16, 2017 estimate.[23] Defendant maintains no new or additional damages were found.[24]

Plaintiff sent Defendant a letter of representation and demand for $14,925.00 on May 8, 2018.[25] Plaintiff then filed suit in state court on July 19, 2018, seeking monetary relief over $100,000, but not more than $200,000.[26] Defendant removed to this Court based on diversity

---

[18] Dkt. No. 30-5 (November 20, 2017 claim decision letter as attached by Defendant); Dkt. No. 39-5 p. 1 (November 20, 2017 claim decision letter as attached by Plaintiff).

[19] Dkt. Nos. 39-3 & 39-5 p. 2 (December 6, 2017 claim denial letter as attached by Plaintiff). Plaintiff also inserts a screenshot of the letter in the second amended complaint. Dkt. No. 24 p. 3.

[20] Dkt. No. 39-4 (December 15, 2017 estimate attached by Plaintiff reflecting a November 16, 2017 inspection and December 15, 2017 completion of estimate); Dkt. No. 30-6 (December 15, 2017 estimate attached by Defendant reflecting a November 16, 2017 inspection and December 15, 2017 completion of estimate). These documents are the same. Confusingly, Defendant also formerly attached the December 15, 2017 estimate to a prior motion, except the first page listed the date of completed estimate as "December 4, 2017." Dkt. No. 15-2 p. 19. It is also missing the Recap of Taxes, Recap by Room, and Recap by Category. *See* Dkt. No. 39-4 pp. 9–11.

[21] *Compare* Dkt. No. 30-4 p. 6 *with* Dkt. Nos. 30-6 p. 6 & 39-4 p. 6.

[22] *Compare* Dkt. No. 30-4 p. 7 *with* Dkt. No. 39-4 p. 7.

[23] Dkt. No. 39-4 p. 8.

[24] Dkt. No. 30 p. 3, ¶ 9 (Defendant's Motion for Summary Judgment).

[25] Dkt. No. 30-7 (attached by Defendant).

[26] Dkt. No. 1-2 p. 2.

jurisdiction on August 17, 2018.[27] The Court later granted Plaintiff leave to amend,[28] and Plaintiff filed a first amended complaint on October 24, 2018.[29]

Plaintiff invoked appraisal on December 12, 2018 pursuant to the Policy.[30] Defendant announced its receipt of Plaintiff's appraisal demand on December 28, 2018, and designated AllStar Adjusters USA as appraiser.[31] Upon motion, the Court abated the case pending appraisal.[32]

On January 31, 2019, Plaintiff's appraiser, Earl Stigler, and Defendant's appraiser, Randy LeBlanc, agreed on an appraisal award designating a replacement cost value of $14,594.58 and an actual cost value of $12,835.33.[33] The parties agree "[t]he scope of the damage is limited to the amount listed in Mr. LeBlanc's estimate."[34] In their proposed Joint Pretrial Order, the parties admit that "[o]n February 7, 2019, [Defendant] issued payment to [Plaintiff] in the amount of $13,683.58."[35] This amount accounts for Plaintiff's deductible.[36] Yet, the parties dispute whether

---

[27] Dkt. No. 1.

[28] Dkt. No. 12; Dkt. No. 52 p. 2, ¶ 2.

[29] Dkt. No. 13.

[30] Dkt. No. 30-13.

[31] Dkt. No. 30-14.

[32] Dkt. No. 21.

[33] Dkt. No. 22 p. 1, ¶¶ 2–3; Dkt. No. 39-6 (January 31, 2019 appraisal award); Dkt. No. 30-8 (February 5, 2019 inspection report bearing AllStar Adjusters USA header which contains the January 31, 2019 appraisal award); Dkt. No. 52 pp. 2, 3, 8. The photos in the inspection report are date stamped January 30, 2019. The appraisal award was signed by Earl Stigler, appraiser for Plaintiff, and Randy LeBlanc, appraiser for Defendant. Dkt. Nos. 39-6, 30-8 p. 2. Defendant notes in its motion for summary judgment that "[b]ecause both appraisers agreed to the estimate and award, the umpire was not needed." Dkt. No. 30 p. 5, ¶ 15.

[34] Dkt. No. 52 p. 8, ¶ 20. Yet, the parties disagree on whether Allstar Adjusters USA prepared the appraisal report on February 5, 2019. *Id.* at p. 9, ¶ 7(1).

[35] Dkt. No. 52 p. 8, ¶ 6(19). In his response to Defendant's motion, Plaintiff specifically states "[o]n February 7, 2019, [Defendant] sent payment to [Plaintiff's] counsel for the [replacement cost value] amount of the award less deductible." Dkt. No. 31 p. 2, ¶ 5.

[36] After Plaintiff's $911.00 deductible was applied, the net appraisal award was $13,683.58. Dkt. Nos. 30-10 & 39-7 (Check for $13,683.58 dated February 7, 2019 and signed by a representative of Defendant with an unidentifiable signature to the order of Plaintiff and Plaintiff's counsel). Defendant also sent a letter to Plaintiff stating that "for [the claim on Plaintiff's coverage of "Dwelling Protection Coverage A" and "Other Structures Protection Coverage B"] only, [Defendant] agrees to pay the Full Cost Of Repair Or Replacement less the deductible." Dkt. No. 30-9 (February 7, 2019 letter from Defendant to Plaintiff with Carl Marsico's signature); Dkt. No. 39-8 (February 7, 2019 letter with Defendant's letterhead but missing a signature). Defendant tendered the payment to Plaintiff for the "full net Replacement Cost Value set forth in the appraisal award." Dkt. No. 39 p. 1, ¶ 3 (Plaintiff's Motion for Partial Summary Judgment).

the Policy or the Texas Prompt Payment of Claims Act ("PPCA") controls the payment deadline, which impacts the timeliness of Defendant's payment of the appraisal award and Plaintiff's available damages. The Court addresses this issue below.

Despite this representation, the parties then filed a "Joint Status Advisory" on February 11, 2019, alleging that "[a]s of February 11, 2019, Plaintiff ha[d] not received any payment."[37] On February 12, 2019, the Court lifted the case's abatement because the parties' appraisal did not resolve the case in full, and upon Plaintiff's request in the advisory, granted Plaintiff additional leave to amend to file a second amended complaint to allege an additional claim for "breach of the loss payment provision following appraisal."[38]

Plaintiff filed a second amended complaint on March 6, 2019, bringing (1) bifurcated claims for breach of contract for "wrongfully denying and/or underpaying the claim . . . [and] failing to pay the appraisal award's policy benefits per the terms of the policy, particularly the Loss Payment and Settlement Provision;" (2) violation of the PPCA, Section 542.051 of the Texas Insurance Code, for "failure to [] pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage;" and (3) bad faith insurance practices, namely, violations of Sections 541.051, 541.060, and 541.061 of the Texas Insurance Code.[39] Plaintiff also requests interest and attorneys' fees under Section 542.060 of the Texas Insurance Code and exemplary and/or treble damages pursuant to Texas Insurance Code Section 541.152(a)–(b).[40] Defendant timely answered.[41]

---

[37] Dkt. No. 22 p. 1, ¶ 2.
[38] Dkt. Nos. 22–23.
[39] Dkt. No. 24 p. 9.
[40] *Id.* at pp. 9–11, ¶¶ 29, 34, 37.
[41] Dkt. No. 25.

The Court then issued a new scheduling order on April 9, 2019, setting a September 30, 2019 discovery deadline and October 14, 2019 dispositive motion deadline.[42] On April 18, 2019, Defendant filed the instant motion for summary judgment, arguing it is entitled to summary judgment on Plaintiff's contractual and extracontractual claims because the parties completed the appraisal process and Defendant paid the appraisal award.[43] Defendant also argues Plaintiff's claims are wholly or partially barred for lack of coverage.[44] Plaintiff filed a response, "acknowledg[ing] that [Defendant] paid the appraisal award in a timely manner, which precludes his breach of contract claim, and derivatively, his [PPCA] claim."[45] Plaintiff noted that "[w]hile [Plaintiff] acknowledges that payment was timely, [Plaintiff] does not concede that timeliness is governed by the [Policy's loss payment provision]."[46] Defendant replied.[47]

On June 28, 2019, the Texas Supreme Court delivered an opinion in *Barbara Technologies v. State Farm Lloyds*, setting new precedent for PPCA claims.[48] Armed with this case, Plaintiff filed a supplemental response to Defendant's motion for summary judgment, arguing his PPCA should survive.[49] For lack of argument, Plaintiff's supplemental response seemingly maintains Plaintiff's concession as to his breach of contract claim and is silent as to Plaintiff's extracontractual claims.[50] Plaintiff then filed a "Motion for Partial Summary Judgment" only on his PPCA claim.[51] Therein, Plaintiff states "[s]hould the Court grant this Motion and enter judgment as requested . . . [Plaintiff] will agree to voluntarily abandon his remaining claims for breach of contract and violations of the Texas Insurance Code Section 541

---

[42] Dkt. No. 28.
[43] Dkt. No. 30; Dkt. No. 52 p. 2, ¶ 2.
[44] Dkt. No. 52 p. 2, ¶ 2.
[45] Dkt. No. 31 p. 2, ¶ 7.
[46] *Id.* at n. 1.
[47] Dkt. No. 32.
[48] No. 17-0640, 2019 WL 2710089, at *6 (Tex. June 28, 2019), *reh'g denied* (Dec. 13, 2019).
[49] Dkt. No. 36.
[50] *Id.*
[51] Dkt. No. 39 p. 2, ¶ 5.

relating to bad faith. To be clear, [Plaintiff] will only abandon these claims in the event the Court grants this pending motion."[52] Defendant responded, requesting the Court hold Plaintiff to his initial concessions regarding his breach of contract and PPCA claims,[53] and Plaintiff replied, arguing he did not abandon his PPCA claim.[54] Plaintiff then argued Defendant "failed to pay the appraisal award within the period set forth in Section 542.058 of the Texas Insurance Code."[55]

In turn, Defendant filed a "Motion to Abate and Administratively Stay Case," citing the potential rehearing of *Barbara Technologies*.[56] While Plaintiff did not file a response, rendering the motion unopposed by operation of the Local Rules, Defendant notes in the motion that Plaintiff is opposed to the abatement and stay request.[57]

## II.    DISCUSSION

### a.  Defendant's Agreed Motion to Withdraw

The "Agreed Motion to Withdraw"[58] is filed by Plaintiff's counsel, David Bergen ("Mr. Bergen"). "An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client."[59] Ultimately, the matter is entrusted to the Court's sound discretion.[60]

Mr. Bergen "will not be involved in the case through trial, and therefore, [] seeks to withdraw in order to focus on other matters at the firm."[61] Richard Daly, a partner of the law firm representing Plaintiff, "will continue as lead counsel."[62] Mr. Bergen notes "[n]o delay or

---

[52] *Id.* at p. 18, ¶ 61.
[53] Dkt. No. 41.
[54] Dkt. No. 42 p. 8, ¶ 22.
[55] *Id.* at pp. 1–2.
[56] Dkt. No. 40.
[57] *Id.* at p. 2, ¶ 6.
[58] Dkt. No. 55.
[59] *Matter of Wynn*, 889 F.2d 644, 646 (5th Cir. 1989).
[60] *Id.*
[61] Dkt. No. 55 p. 1, ¶ 2.
[62] *Id.*

continuance is needed," and "Defendant is in agreement with the requested relief."[63] Because such withdrawal provides reasonable notice to the parties, the Court finds good cause to grant the motion. Accordingly, the Court **GRANTS** the motion.

### b. Defendant's Motion to Abate and Administratively Stay Case

Defendant hinges its request for abatement and administrative stay on the Texas Supreme Court's review of a Petition for Rehearing in *Barbara Technologies*.[64] Defendant requests the Court abate and administratively stay the case because, without citing to the relevant case law, "additional case law [that] has since developed pertaining to potential violations of PPCA claims in these first-party matters . . . [and] unsettled case law on the PPCA issue."[65] Plaintiff is apparently opposed,[66] but did not file a response in opposition by the requisite response deadline; thus, Plaintiff is unopposed by operation of the Local Rules.[67]

The Texas Supreme Court has since denied the Petition for Rehearing,[68] rendering Defendant's motion moot. Nevertheless, the Court notes Texas state and federal courts, including one in this Court's District, moved forward with similar pending matters since the June 28, 2019 *Barbara Technologies* opinion before and after the filing of the pending Petition for Rehearing in that case.[69] Defendant cites to no authority binding the Court to cater its personal case management to the calendar of the Texas Supreme Court.

Accordingly, the Court **DENIES AS MOOT** Defendant's motion. The Court turns to the parties' motions for summary judgment.

---

[63] *Id.* ¶¶ 3–4.
[64] Dkt. No. 40.
[65] *Id.* at p. 2, ¶¶ 5–6. Defendant alternatively requests the Court extend its response to Plaintiff's motion for partial summary judgment by 30 days. Because Defendant has already filed its response, such request is now moot.
[66] Dkt. No. 40 pp. 2–3, ¶ 6.
[67] L.R. 7.4 ("Failure to respond to a motion will be taken as a representation of no opposition.").
[68] *Barbara Techs.*, 2019 WL 2710089.
[69] *See Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, No. 4:18-CV-382, 2019 WL 3776450 (E.D. Tex. Aug. 12, 2019); *Hyewon Shin v. Allstate Texas Lloyds*, No. 4:18-CV-01784, 2019 WL 4170259 (S.D. Tex. Sept. 3, 2019); *Lambert v. State Farm Lloyds*, No. 02-17-00374-CV, 2019 WL 5792812 (Tex. App. Nov. 7, 2019).

### c. Motions for Summary Judgment

#### i. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[70] "A fact is 'material' if its resolution could affect the outcome of the action,"[71] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[72] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[73] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[74]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[75] but is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[76] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[77] This demonstration must specifically indicate facts and their significance,[78] and cannot consist solely of "[c]onclusional

---

[70] Fed. R. Civ. P. 56(a).

[71] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).

[72] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).

[73] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[74] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

[75] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[76] *See id.* at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).

[77] *See Celotex Corp.*, 477 U.S. at 323.

[78] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[79]

## ii. Summary Judgment Evidence

Defendant provides summary judgment evidence in the following forms: (1) a notarized copy of the Policy as certified by Defendant's Claim Support employee, Jeremy LeBeau;[80] (2) an affidavit signed by Defendant's Property Litigation Consultant and a custodian of records, Carl J. Marsico,[81] along with (a) Defendant's November 2, 2017 claim acknowledgement letter,[82] (b) Mr. Curtis' November 16, 2017 estimate,[83] (c) Defendant's November 20, 2017 claim denial letter,[84] (d) Mr. Curtis' December 15, 2017 estimate,[85] (e) Plaintiff's May 8, 2018 demand letter to Defendant,[86] (f) February 5, 2019 inspection report, photos, and agreed January 31, 2019 appraisal award,[87] (g) a letter sent by Carl J. Marsico dated February 7, 2019, "advising of full payment of the appraisal award minus Plaintiff's deductible,"[88] (h) Defendant's check for $13,683.58 paid to the order of Plaintiff and Plaintiff's counsel,[89] and (i) a February 8, 2019 FedEx delivery receipt;[90] and (3) an affidavit signed by Defendant's counsel, Brittany M. Baker,[91] along with (a) Plaintiff's counsel's December 12, 2018 letter to Defendant's counsel

---

[79] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[80] Dkt. No. 30-1.
[81] Dkt. No. 30-2.
[82] Dkt. No. 30-3.
[83] Dkt. No. 30-4.
[84] Dkt. No. 30-5.
[85] Dkt. No. 30-6.
[86] Dkt. No. 30-7.
[87] Dkt. No. 30-8.
[88] Dkt. No. 30-9.
[89] Dkt. No. 30-10.
[90] Dkt. No. 30-11.
[91] Dkt. No. 30-12.

invoking appraisal,[92] and (b) Defendant's counsel's December 28, 2018 letter to Plaintiff's counsel designating Defendant's appraiser, Randy LeBlanc.[93]

Plaintiff also provides the following summary judgment evidence: (1) a Declaration of David L. Bergen,[94] along with (a) the same copy of the Policy as attached by Defendant,[95] (b) Defendant's November 2, 2017 claim acknowledgement letter,[96] (c) Defendant's November 20, 2017 claim denial letter,[97] (d) Defendant's December 6, 2017 second claim denial letter,[98] (e) Mr. Curtis' December 15, 2017 estimate,[99] (f) the agreed January 31, 2019 appraisal award,[100] (g) Defendant's check for $13,683.58 paid to the order of Plaintiff and Plaintiff's counsel,[101] and (h) Defendant's February 7, 2019 letter to Plaintiff regarding payment.[102]

The Court finds the parties provides competent summary judgment evidence. The affidavits are made on personal knowledge, set out facts that would be admissible evidence, and therein show the affiants competent to testify on the matters stated.[103]

### iii. Breach of Contract

Plaintiff's breach of contract claim is based on two alleged breaches: (1) the initial denial and/or underpayment of the claim; and (2) the timeliness of payment according to the Policy's Loss Payment and Settlement Provision.[104] The Court begins with the second basis.

---

[92] Dkt. No. 30-13.
[93] Dkt. No. 30-14.
[94] Dkt. No. 39-9.
[95] *Compare* Dkt. No. 30-1 *with* Dkt. No. 39-1.
[96] Dkt. No. 39-2.
[97] Dkt. No. 39-5.
[98] Dkt. No. 39-3.
[99] Dkt. No. 39-4. Plaintiff's attached December 15, 2017 estimate contains 11 pages. Defendant attaches the same estimate, but such estimate contains 12 pages. *Compare* Dkt. No. 30-6 *with* Dkt. No. 39-4. The twelfth page is an eagle view diagram of the property indicating the storm direction. Dkt. No. 30-6 p. 12.
[100] Dkt. No. 39-6.
[101] Dkt. No. 39-7.
[102] Dkt. No. 39-8. Plaintiff's attached February 7, 2019 letter is missing the signature from Carl Marsico, as included on Defendant's attached February 7, 2019 letter. Further, only Plaintiff's attached version contains a February 8, 2018 "RECEIVED" stamp. *Compare* Dkt. No. 30-9 *with* Dkt. No. 39-8.
[103] *See* Fed. R. Civ. P. 56(c)(4).

As to the alleged second breach, the Court notes Plaintiff's stance on this claim and the timeliness of payment is inconsistent, and generally, Plaintiff conceded throughout his filings that the appraisal payment was timely. Although Plaintiff's breach of contract claim in his second amended complaint is based "particularly on the Loss Payment and Settlement Provision,"[105] Plaintiff argues in his reply brief to his own motion for partial summary judgment that Section 542.058 of the Texas Insurance Code controls the timeliness of the parties' appraisal payment instead of the Policy's Loss Payment Provision.[106]

*Barbara Technologies* clearly held "use of the appraisal process falls outside the scope of section 542.055."[107] "Because the [PPCA] does not address appraisals at all, the timeliness of any appraisal payment must be based on deadlines provided in the policy's appraisal provision, if any, and not on anything within the [PPCA]. But a payment that is timely under a policy appraisal provision may not be timely under the [PPCA]."[108]

Here, Plaintiff's reliance on the timeframe set out in Section 542.058 to establish his breach of contract claim is misplaced. *Barbara Technologies* provides for the Policy's Loss Payment and Settlement Provision to control the appraisal payment deadline. The Court must now determine whether the appraisal payment was timely according to the Policy.

Section 542.058, which is part of the PPCA, provides for damages if the insurer, after receiving notice of the claim under Section 542.055, "delays payment of a claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a

---

[104] Dkt. No. 24 p. 9 ("[Defendant] breached the terms of that contract by wrongfully denying and/or underpaying the claim. [Defendant] further breached the policy by failing to pay the appraisal award's policy benefits per the terms of the policy, particularly the Loss Payment and Settlement Provision.").

[105] Dkt. No. 24 p. 9.

[106] Dkt. No. 42 pp. 1–2.

[107] *Barbara Techs.*, 2019 WL 2710089, at *6.

[108] *Id.* at *20 n. 12 (Boyd, J., concurring in part and dissenting in part).

period, for more than 60 days . . . ."[109] Section 542.055 expressly addresses an insurer's receipt

of notice a claim and instructs an insurer under these circumstances to "not later than the 15th

day" acknowledge receipt of the claim, commence any investigation of the claim, and request

certain items from a claimant.[110] Conversely, the Policy's Loss Payment and Settlement

Provision provides:

> a. If we notify you that we will pay your claim, or part of your claim, we must
>    pay within 5 business days after we notify you.
> b. If payment of you[r] claim or part of your claim requires the performance of
>    an act by you, we must pay within 5 business days after the date you
>    performed the act.[111]

Plaintiff agrees the appraisal award was issued on January 31, 2019.[112] Defendant alleges

it received notice of the award on February 5, 2019.[113] The parties admit in their proposed Joint

Pretrial Order that "[o]n February 7, 2019, [Defendant] issued payment to [Plaintiff] in the

amount of $13,683.58."[114] Carl Marsico, Defendant's Property Litigation Consultant and a

custodian of records, states he "issued Check # 521012696 for $13,683.58 to [Plaintiff] and

[Plaintiff's counsel]" at an address that matches Plaintiff's counsel's office address.[115] Such

payment apparently was accompanied by a February 7, 2019 letter, stating Defendant "agrees to

pay the Full Cost Of Repair Or Replacement less the deductible."[116] In support, Defendant

attaches a February 8, 2019 FedEx delivery receipt indicating a FedEx envelope was delivered to

"Reception/Front Desk" of Plaintiff's counsel's office.[117]

---

[109] Tex. Ins. Code § 542.058.

[110] *Id.* § 542.055.

[111] Dkt. No. 30-1 p. 36 (the Policy, "Loss Payment").

[112] Dkt. No. 31 p. 2, ¶ 5; Dkt. No. 39-6 (agreed January 31, 2019 appraisal award as attached by Plaintiff).

[113] Dkt. No. 52 p. 6.

[114] *Id.* at p. 8, ¶ 19; Dkt. No. 39-7 ($13,683.58 check paid to the order of Plaintiff and Plaintiff's counsel).

[115] Dkt. No. 30-2 p. 2, ¶ 10.

[116] *Compare* Dkt. No. 30-9 *with* Dkt No. 39-8. Plaintiff's attached February 7, 2019 letter is missing the signature from Carl Marsico, as included on Defendant's attached February 7, 2019 letter. Further, only Plaintiff's attached version contains a February 8, 2018 "RECEIVED" stamp.

[117] Dkt. No. 30-11.

Yet, Plaintiff contests "[w]hether Counsel for Plaintiff received the appraisal award on February 8, 2019 via FedEx."[118] Plaintiff also represented in the parties' February 11, 2019 joint status advisory that "[a]s of February 11, 2019, Plaintiff has not received any payment."[119] However, Plaintiff includes in his summary judgment evidence his own copy of Defendant's February 7, 2019 letter, except Plaintiff's copy bears a faint "RECEIVED" stamp dated February 8, 2019.[120]

It is unclear whether Plaintiff's representations in the joint status advisory meant that Plaintiff truly had not received the payment or that the payment had not financially processed through Plaintiff's account. Regardless, Plaintiff does not provide evidence to show the contrary, such as corresponding bank statements. Accordingly, notwithstanding Plaintiff's inconsistent position on the timeliness of the appraisal payment, Plaintiff's own evidence shows there is no genuine issue of material fact that Plaintiff received payment on February 8, 2019.

February 8, 2019 is clearly within 5 business days after Defendant notified Plaintiff of payment in accordance with the Policy's Loss Payment provision. Thus, there is no genuine issue of material fact that the appraisal payment was timely according to the controlling Policy. Plaintiff's breach of contract claim on the second basis fails.

As to the first alleged breach based on Defendant's initial denial and/or underpayment of the claim, the Supreme Court of Texas in *Ortiz v. State Farm Lloyds*, the sister case to *Barbara Technologies*, held "an insurer's payment of an appraisal award in the face of similar allegations of pre-appraisal underpayment forecloses liability on a breach of contract claim."[121] In other words, "the appraisal process already resolves any dispute over the amount of loss *pursuant to*

---

[118] Dkt. No. 52 p. 9, ¶ 7(2).
[119] Dkt. No. 22 p. 1, ¶ 2.
[120] *Compare* Dkt. No. 30-9 *with* Dkt No. 39-8.
[121] No. 17-1048, 2019 WL 2710032, at *3 (Tex. June 28, 2019), *reh'g denied* (Dec. 13, 2019).

*the Policy*. And the difference in the adjuster's low damage valuation and the issued appraisal award does not equate to a breach."[122] Thus, Plaintiff's breach of contract claim on this basis is foreclosed because Defendant paid the claim in compliance with its obligations under the Policy.[123]

The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's breach of contract claim.

### iv. Bad Faith Insurance Claims

Plaintiff argues Defendant violated Chapter 541 of the Texas Insurance Code, specifically §§ 541.051, 541.060, and 541.061.[124] Defendant argues its "payment of the appraisal award resolves and disposes of all claims in this lawsuit . . . [and] Plaintiff is estopped from maintaining his breach of contract claim and extra-contractual claims as a matter of law."[125] Defendant further argues "Plaintiff has not alleged damages beyond lost policy benefits, [and] his extra-contractual claims must be dismissed . . . the facts giving rise to Plaintiff's extra-contractual claims relate solely to [Defendant's] handling of Plaintiff's claim and Plaintiff's claim for policy benefits."[126]

Plaintiff counters, arguing he "need not show that [Plaintiff] is entitled to 'additional policy benefits' or an 'independent injury' in order to maintain his statutory bad faith claim. Rather, [Plaintiff] need only show that he was entitled to benefits, period, and that he lost those

---

[122] *Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, No. 4:18-CV-382, 2019 WL 3776450, at *4 (E.D. Tex. Aug. 12, 2019) (citing *Ortiz*, 2019 WL 2710032, at *3–*4).

[123] *Ortiz*, 2019 WL 2710032, at *4 ("Having invoked the agreed procedure for determining the amount of loss, and having paid that binding amount, State Farm complied with its obligations under the policy.").

[124] Dkt. No. 24 pp. 9–10. The Court notes in the parties' proposed Joint Pretrial Order, Plaintiff states he "has brought claims against Defendant for violation of the Texas Insurance Code, Chapter 541 and the Texas Deceptive Trade Practices Act. *See* TEX. INS. CODE 541.001 et. seq. and TEX. BUS. & COMM. CODE § 1746 et seq." Dkt. No. 52 p. 4. Plaintiff makes no claim under the Texas Deceptive Trade Practices Act in his second amended petition. To the extent Plaintiff now wishes to bring such claim, Plaintiff fails to provide any supporting argument or evidence.

[125] Dkt. No. 30 pp. 1–2, ¶ 1.

[126] *Id.* at p. 8, ¶ 23.

benefits as a result of an alleged statutory violation."[127] Plaintiff continues that "[o]nce shown at trial, Dunne [sic] may be entitled to policy benefits (offset by the appraisal payment), exemplary damages that may be trebled for a 'knowing' violation, prompt payment interest, and reasonable and necessary attorneys' fees."[128] Plaintiff asserts these "additional damages are important to ensuring [Plaintiff] is made whole instead of forced to pay his case expenses and attorneys' fees, at a minimum, out of the amount [Defendant] paid pursuant to the appraisal award."[129]

Following the trail of the typo, the Court notes the plaintiff in *Dunne v. Allstate Vehicle and Property Ins. Co.*, which is before a different court in this District, raised this same argument verbatim.[130] Days ago, the *Dunne* court held, "[u]nless Dunne can show actual damages separate from the policy benefits Allstate paid, judgment for Allstate must be rendered . . . Dunne has not pled or proven damages separate from policy benefits and Allstate has paid all policy benefits to which Dunne is entitled . . . ."[131]

The *Dunne* court cited *Ortiz*'s holding that attorney's fees and costs incurred in prosecuting a suit are not considered "actual damages."[132] "Texas law is clear that attorney's fees and costs incurred in the prosecution or defense of a claim, although compensatory in that they help make a claimant whole, are not damages."[133]

---

[127] Dkt. No. 31 p. 4, ¶ 13.

[128] *Id.*

[129] *Id.*

[130] *Compare* Dkt. No. 31 *with Dunne v. Allstate Vehicle and Property Ins. Co.*, No. 4:18-cv-04519, 2019 WL 2164925 (S.D.Tex.) ("As established below, Dunne need not show that he is entitled to "additional policy benefits" or "an independent injury" to maintain his statutory claims. Rather, Dunne need only show that he was entitled to benefits, period, and lost those benefits as a result of an alleged statutory violation. Once shown at trial, Dunne may be entitled to policy benefits (off-set by the appraisal payment); exemplary damages up to treble damages for a "knowing" violation; prompt payment damages, and reasonable and necessary attorneys' fees. These additional damages are important to ensuring Dunne is made "whole," because currently Dunne cannot fix his property because he is forced to pay his case expenses and attorney's fees, at a minimum, out of the amount needed to fix his damages.").

[131] *Dunne v. Allstate Vehicle & Prop. Ins. Co.*, No. CV H-18-4519, 2020 WL 130101, at *2 (S.D. Tex. Jan. 10, 2020). The Court notes Plaintiff's counsel is also counsel for the plaintiff in *Dunne*.

[132] *Ortiz*, 2019 WL 2710032, at *5.

[133] *Id.*

Thus, this Court, bound by the *Ortiz* precedent and guided by *Dunne*'s opinion on the same issue, finds Plaintiff improperly bases his bad faith extracontractual claims on attorney's fees as requested. Similarly, Plaintiff fails to show separate damages from the policy benefits already paid by Defendant. Finally, Plaintiff provides no evidence that his requested exemplary damages are not actual damages or separate from the policy benefits.

The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's extracontractual claim.

### v. PPCA

Because both parties have filed motions for summary judgment on Plaintiff's PPCA claim, the Court addresses them together. Defendant argues Plaintiff's PPCA claim is precluded as the appraisal award has been timely paid.[134] Despite originally agreeing his PPCA claim was precluded given the timely appraisal payment, Plaintiff now argues *Barbara Technologies* allows his PPCA claim to survive because "there is no issue of material fact regarding liability after [Defendant] unconditionally admitted that its post-appraisal payment was for benefits due and owed to [Plaintiff] under the policy."[135] Plaintiff argues Defendant has repeatedly "admitted the claim is covered and paid those covered damages following appraisal" thereby foreclosing the PPCA claim in favor of Plaintiff.[136] The Court finds neither party is entitled to summary judgment on this claim.

*Barbara Technologies* provides clarity as to the relationship between deadlines statutorily provided in the PPCA and deadlines later delineated in a contractual appraisal process. Specifically, the Supreme Court of Texas in *Barbara Technologies* endeavored to determine if an insurer's payment of an appraisal award after rejecting the insured's pre-suit claim precludes

---

[134] Dkt. No. 30 p. 9.
[135] Dkt. Nos. 36, 39.
[136] *Id.* at 2.

recovery under the PPCA.[137] There, Barbara Technologies filed suit alleging violations of the PPCA, among other claims, after the insurer investigated, evaluated, and ultimately rejected the claim after finding the damages fell below plaintiff's deductible. Much later, the insurer paid the agreed appraisal award, which totaled over 55 times greater than the insurer's original damages finding. The insurer paid the appraisal award four business days after receiving notice from the appraisers. Barbara Technologies received payment; amended its petition to include only a PPCA claim; and moved for summary judgment, specifically claiming it was entitled to PPCA statutory damages for the insurer's failure to pay the claim within the 60-day PPCA timeframe. The insurer filed a cross-motion for summary judgment, arguing that it timely paid the appraisal award, and in turn, did not violate the PPCA and had no liability under the policy.

*Barbara Technologies* uprooted precedent by holding an insurer's payment of an appraisal award neither establishes nor forecloses liability under the policy. An insurer's "payment of an appraisal award on a rejected claim does not subject the insurer to prompt pay damages under section 542.060 unless and until the insurer either accepts liability under the policy or is adjudicated liable."[138] Thus, an insured's recovery under section 542.060 of the PPCA requires the insured to establish: "(1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the [PPCA] in processing or paying the claim."[139] Because neither party met their burden under this new standard, the *Barbara Technologies* court remanded the case to determine liability.

Here, Plaintiff generally argues the provided language used by Defendant establishes that Defendant "conceded that it was liable for [Plaintiff's] insurance claim."[140] Plaintiff attempts to

---

[137] Dkt. No. 39 p. 9, ¶ 32.
[138] *Barbara Techs.*, 2019 WL 2710089, at *14.
[139] *Id.* at *4 (citations omitted).
[140] Dkt. No. 39 p. 12, ¶ 40.

distinguish his case from *Barbara Technologies* where "[Defendant] has admitted the claim is covered and tendered the appraisal award to [Plaintiff] because the award was due and owed to [Plaintiff] under his policy."[141] According to Plaintiff, Defendant "admitted four separate times in its motion that its appraisal payment was for benefits due and owed under the policy," which allegedly subjects Defendant to PPCA damages per section 542.058.[142] Plaintiff then cites to "five examples," namely, language found in Defendant's February 7, 2019 letter and motions, that Defendant "admitted:" (1) the appraisal payment was "an unconditional payment for 'the Full Cost or Replacement less deductible;'" (2) Defendant "tendered payment of the 'full net Replacement Cost Value;'" (3) the payment "was in compliance with the 'Loss Payment' provision in the policy;" and twice (4) "[Plaintiff] had received 'the full extent of all recoverable benefits under the subject Policy."[143] Plaintiff also argues that "[n]ot one time has [Defendant]— like State Farm in [*Barbara Technologies*]—reserved its rights or defenses with a disclaimer of liability."[144]

Defendant argues the language in the letter "does not mean that [Defendant] accepts that the claim was covered under the policy. This means exactly what the letter states – that the

---

[141] *Id.* at p. 9, ¶ 32.

[142] *Id.* at p. 1–2, 5. The relevance of Plaintiff's now direct citation to § 542.058 is not lost on the Court. Though Plaintiff has previously generally cited to the PPCA for its claim, Plaintiff now directly cites to § 542.058. Dkt. No. 24, p. 9; Dkt. No. 39 p. 5. This is likely due to the Supreme Court of Texas' acknowledging the issue of "whether section 542.058's 'shall pay damages' language could be the basis for [PPCA] damages for late payment, independent of section 542.060's limitation of [PPCA] damages to insurers 'liable on a claim under an insurance policy.'" *Barbara Techs.*, 2019 WL 2710089, at *13. The *Barbara Technologies* court did not decide the issue but did note the court's history of recognizing a liability element for imposing PPCA damages. *Id.* (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007); *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005); *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001), *judgment withdrawn and superseded on reh'g*, No. 00-0282, 2001 WL 1412951 (Tex. June 21, 2001)). Yet, the Fifth Circuit has analyzed the relationship between the two sections and found that to recover under § 542.058, an insurer would still have to be found liable pursuant to § 542.060. "In sum, the [PPCA] (1) imposes on insurers a series of claims-handling deadlines, §§ 542.055–.058; and (2) enforces those deadlines by requiring insurers who fail to comply with them (and who ultimately are liable on the claim) to pay statutory interest." *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 795 F.3d 496, 509 (5th Cir. 2015). Based on the foregoing, this Court will require a liability determination for any damages under the PPCA.

[143] Dkt. No. 39 pp. 9–12.

[144] *Id.* at p. 12, ¶ 39.

appraisal process set the amount of loss under certain coverages and [Defendant] has chosen to pay the full cost or repair or replacement less the deductible."[145] Further, Defendant states it "tendered the full net replacement cost value *set forth in the appraisal award.*" In sum, Defendant cites to each of Plaintiff's examples and argues these statements were not admissions of liability or acceptance that Plaintiff's claim was covered, but rather, statements that payment was made pursuant to the appraisal award and the appraisal award was timely paid pursuant to the policy.[146]

The Court agrees with Defendant and finds Plaintiff corrupts *Barbara Technologies* ultimate holding. *Barbara Technologies* clearly lays out that "payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy for purposed of [PPCA] damages."[147] While Defendant may not have expressly disclaimed liability like the insurer in *Barbara Technologies*, *Barbara Technologies* did not hold that a disclaimer was the only liability shield available to an insurer.[148] Defendant's letter does nothing more than detail the contractually required payment made by Defendant after the appraisal process.

Plaintiff improperly equates a payment under the policy to an admission of liability.[149] Plaintiff attempts to argue that "[Defendant] must produce evidence to show a genuine fact issue that the appraisal award is not covered under the Policy or is not owed to [Plaintiff]."[150] Yet, Plaintiff seems to ignore much of *Barbara Technologies* and forego his own burden of proof. *Barbara Technologies* repeatedly notes the appraisal process is one "included in most property

---

[145] Dkt. No. 41 p. 3, ¶ 4.
[146] *Id.*
[147] *Barbara Techs.*, 2019 WL 2710089, at *9.
[148] *See id.* at *9, n. 11 (detailing the insurer's express disclaimer of liability).
[149] Dkt. No. 42 pp. 1–3.
[150] *Id.* at p. 2.

insurance policies" and "[a]ppraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim."[151] A payment for covered loss under the policy is not the same as an admission of liability. "[Insurer] never denied that [insured]'s loss was covered, but merely disputed the extent of the loss and whether it met the deductible—disputing its liability on the claim."[152] Defendant has not admitted its liability and no proceeding to determine the validity of the claim has occurred. Plaintiff has provided no evidence Defendant has admitted liability outside of the appraisal payment or process. Therefore, Plaintiff cannot show entitlement to PPCA damages as a matter of law.

As to Defendant's motion, *Barbara Technologies* singlehandedly shatters the crux of Defendant's argument: "[A]n insurer's payment of an appraisal award does not as a matter of law bar an insured's claims under the [TPPCA]."[153] *Barbara Technologies* distinctly held the appraisal award is not a liability determination and makes clear that claims for damages under the PPCA are not precluded following payment of an appraisal award as liability under the policy has not been established.

The Court **DENIES** Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment as to Plaintiff's PPCA claim.

### III. CONCLUSION

The Court **GRANTS** Defendant's "Agreed Motion to Withdraw." The Court hereby **ORDERS** David Bergen be **WITHDRAWN** as Plaintiff's counsel. The Court **DENIES AS MOOT** Defendant's "Motion to Abate and Administratively Stay Case." The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's "Motion for Summary Judgment;" and **DENIES** Plaintiff's "Motion for Partial Summary Judgment." The Court thus **DISMISSES WITH**

---

[151] *Barbara Techs.*, 2019 WL 2710089, at *5.
[152] *Id.* at *10.
[153] *Ortiz*, 2019 WL 2710032, at *6 (citing *Barbara Techs.*, 2019 WL 2710089.

**PREJUDICE** Plaintiff's breach of contract and bad faith insurance claims against Defendant. Only Plaintiff's claim under the Texas Prompt Payment of Claims Act remains. The parties' final pretrial conference remains set for **January 21, 2020 at 9:00 a.m.**[154]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of January, 2020.

Micaela Alvarez
United States District Judge

---

[154] Dkt. No. 28.